LAND, J.
This is a mandamus suit to compel the Secretary of State to file and record relator’s charter and to issue a proper *559 certificate attesting such filing and registry, pursuant to Act No. 59, p. 83, of 1898, and also to issue a certificate and license to do business, as provided by Act No. 246, p. 366, of 1908.
The Secretary of State answered:
(1) That the charter of the relator did not conform to the requirements of section 2 of Act No. 105, p. 134, of 1898, in a number of particulars.
(2) That the printed form of policy and application submitted by relator to respondent showed that the business contemplated by relator was not that of industrial life insurance.
(3) For other reasons not necessary to mention.
The case was tried, there was judgment ordering the respondent to file in his office the charter of the relator, and to issue to relator a certificate of the filing of the same, but rejecting in all other respects the relief prayed for in relator’s petition. The relator has appealed.
It appears, from the reasons for judgment assigned by our learned Brother below, that the contention of relator was that section 2 of Act No. 105, p. 134, of 1S9S, had been repealed by subsequent legislation, and that it was admitted in argument that if said section was still in force relator was not entitled to a writ commanding the Secretary of State to issue the license prayed for by relator.
After an examination of all the subsequent statutes on the subject-matter, we concur in the conclusion of the district judge that section 2 of Act No. 105, p. 134, of 1898, is still in full force and effect.
Counsel for relator has withdrawn the admission in argument referred to by the district judge as one made improvidently and in error. We shall, therefore, give the same no weight in our consideration of the case.
Section 2 of Act No. 105, p. 134, of 1898, provides that every charter of an insurance company shall contain certain provisions enumerated in sundry paragraphs, and the Secretary of State set forth in his answer, inter alia, that relator’s charter did not comply with paragraphs 4, 5, and 6 of said section.
Paragraph 4 reads:
“The amount of capital stock, the number of shares, the amount of each share, the time when and the manner in which payment on stock subscribed shall be made.”
Article 4 of the charter reads:
“The capital stock of this corporation shall be thirty-five thousand dollars, divided into three hundred and fifty shares of one hundred dollars each.”
It is patent that this article does not state “the time when and the manner in which payment on stock subscribed shall be made.”
Paragraph 5 of said section reads:
“The designation of general officers, the number of directors or trustees, and their names, and the mode in which the election of directors or managers shall be conducted.”
The charter of relator is silent as to the mode of conducting the election of directors.
Paragraph 6 of said section reads:
“The mode of liquidation at the termination of the charter.”
The charter of relator provides no mode of liquidation of any kind.
The hiatus mentioned in article 4 of the charter is not supplied by section 2 of Act No. 246, p. 366, of 1908, providing that all industrial insurance stock companies must have a capital stock of $10,000, fully paid up in cash, before beginning business.
Such prohibition does not limit the capital stock to $10,000, nor does it say that all stock subscribed shall be paid in cash. In the very case at bar the payment in cash of less than one-third of the amount of the capital stock would enable the company to begin business. *561 It is obvious that the said section does not refer to the time when and the manner in which stock subscriptions shall be paid into the corporate treasury. Our statutes have from the very beginning required that every charter of incorporation of a stock company shall contain “the amount of the capital stock, the number of shares, the amount or each share and the time when and the manner in which payment on stock subscribed shall be made,” and paragraph 4, § 2, Act No. 105, p. 134, of 1S98, is but a repetition of prior enactments. Rev. St. 1870, § 685; Act No. 131, p. 1S2, of 1855.
The statutory requirements on this subject seem to us to be of great public importance, as evidenced by the legislation noted, and the intention of the lawmaker to repeal them by implication cannot be presumed.
The other two defects urged by the Secretary of State are plain omissions in the charter to provide a mode for conducting the'election of directors and managers and a mode of liquidation of the corporation at the termination of its charter.
It is not contended that these omissions have been supplied by subsequent legislation; but it is argued that they are mere technical requirements, that do not affect the substance of the charter. We cannot accept this view.
The lawmaker has specified what provisions charters for insurance companies must contain, and the requirements of the statute cannot be disregarded as mere surplusage.
Other issues were raised and discussed below ; but our learned Brother did not deem it necessary to decide them.
One of them involved the question of what kind of insurance business the relator intended to carry on under the proposed charter. This question will properly arise when or after the relator has filed a charter in compliance with legal requirements.
Judgment affirmed.